IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ELIZABETH LYNN BUNYA, | ) | Case No. 08-20762 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| LARAMIE COUNTY LIBRARY SYSTEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-2002 |
| | ) | |
| ELIZABETH LYNN BUNYA. | ) | |
| | ) | |
| Defendant. | ) | |

FILED

3:14 pm, 11/2/10

Tim J. Ellis
Clerk of Court

**OPINION ON COMPLAINT OBJECTING TO DISCHARGE**

On August 25, 2010, this matter came before the Court for trial on the Complaint Objecting to Discharge filed by the Laramie County Library System ("Library") and the Answer filed by Elizabeth Lynn Bunya ("Debtor"). The Library was represented by James R. Salisbury. Ms. Bunya represented herself.[1] The Court having considered the testimony, evidence and arguments of the parties, and for the reasons stated below, denies the complaint.

**JURISDICTION**

The Court has jurisdiction of this matter under 28 U.S.C. §§ 157 and 1334. This is

---

[1] The Debtor was represented by Ken McCartney in the underlying bankruptcy case No. 08-20762 and this adversary. Mr. McCartney was allowed to withdraw by the order entered October 9, 2009.

a core proceeding under 28 U.S.C. § 157(b)(2)(J).

**FACTS**

The Library and the Debtor began their business relationship when the Library wanted to include a café in the new facility. After soliciting proposals from venders, Synergy Café, Inc.[2] ("SCI") was selected. The Debtor testified that she was the director and officer of SCI. Her sister was the secretary of the corporation. She, her parents, husband and "Macky" were shareholders. SCI and the Library entered into the "Library Food and Beverage Lease Agreement," ("Agreement") "to allow for the construction, equipping and operation of a food and beverage service...and to provide for the lease of the space for the same." Dale Anderson, "Chair LCL Board of Directors" executed the agreement on April 26, 2007 on behalf of the Library. The Debtor executed the agreement on May 20, 2007 on behalf of "Synergy Café."

The Agreement sets out the Contractor's responsibilities, in part:

> "(a) CONTRACTOR will complete decor and equipment selection and installation in a professional and workmanlike manner and in compliance with all applicable laws and other governmental requirements, and subject to LIBRARY'S approval of all plans and specifications. *Such items will be purchased and installed at CONTRACTOR'S expense...*"[3]

SCI entered into a Lease Agreement ("Lease") with Summit Commercial Financial

---

[2] Synergy Café, Inc. filed for bankruptcy protection on March 6, 2009. The case was closed without discharge on May 4, 2007.

[3] Emphasis added.

Page 2

Company on September 19, 2007. Debtor executed a "Guarantee" of the Lease on September 10, 2007. SCI leased "all property described in the agreement."

The Library and SCI entered into the "Addendum to Library Food and Beverage Lease Agreement - Laramie County Library System, Cheyenne, Wyoming & Synergy Café, Inc." ("Addendum") on September 25, 2007. Denise Kelsey, "Chair LCL Board of Directors," executed the document on behalf of the Library. Liz Bunya, President, executed the Addendum on behalf of Synergy Café.

The modifications, as stated in the Addendum, were:

"A.    LIBRARY agrees to waive for one month the $1,000 security deposit which will now be due on Oct[.] 15, 2007.

B.    The purpose of this addendum is to extend the Agreement to a period of three years to accomplish the purposes set forth herein.

C.    Due to shortfalls in funding available to CONTRACTOR,[4] LIBRARY agrees to fund the following items in consideration for payment by CONTRACTOR over the period of, and in accordance with, the terms of the Agreement and this Addendum:

1)    Building tenant finishing including: free standing condiment/waste receptacle, drink rail ( a stool high counter that is along windows), hooking up owner supplied fixtures and equipment including doing such things as drilling holes in counter tops, installing specialty lighting, installing various pieces of equipment, etc.

2)    Various equipment, furniture, decor items and signage necessary for the operation of the café facilities, said equipment more particularly described in Attachment "A" affixed hereto and fully incorporated in this Agreement and Addendum[.]

---

[4] CONTRACTOR is identified as Synergy Café, Inc. in both the Agreement and the Addendum.

Page 3

>    D.  In consideration for the provision of the above described, CONTRACTOR agrees and warrants that in addition to the sum agreed to in item 5e[5] of the Agreement; it will pay an additional $1,700 per month on the same time frame as indicated in 5e for a total of an additional $51,485.00 over the period of this Agreement and Addendum. Upon successful and full completion of the terms of this Agreement and Addendum and payment of the full additional amount, LIBRARY will provide ownership of the above described equipment, furniture, decor, and signage, excluding any items which have become by nature of their installation, fixtures., in accord with section 5(a) of the Agreement. No penalty for pre-payment shall be imposed. If conclusion or termination of the agreement occurs sooner than 3 years, without fault and not for cause or breach necessitated by the actions of CONTRACTOR, CONTRACTOR may acquire ownership of the items listed herein by paying any remaining amount required by the agreement..."

Attachment "A," referenced in the Addendum, included numerous invoices from different venders, reflecting the purchase prices for the necessary equipment needed for the operation of the café. The invoices do not reflect that the equipment was to be leased.

On October 2, 2007, the Library issued a check in the amount of $51,485.00, payable to SCI. The Debtor endorsed the check and deposited the funds into the SCI account at American National Bank in Cheyenne, Wyoming. On that same date, the Debtor transferred $41,485.00 to an account at First Education Federal Credit Union, ("Credit Union") in Cheyenne owned by Ken Bunya and Elizabeth Bunya. The Library terminated the lease with SCI on April 18, 2008 citing section 6(c)(I) of the Agreement, that states, "This agreement may be terminated...by either party at any time upon the breach by the other party of a term

---

[5] 5e of the Agreement states "CONTRACTOR agrees and warrants that it will pay LIBRARY the sum of four hundred dollars ($400) per month, on or before the first day of each month, from the commencement of this Agreement, as compensation to operate the food and beverage sale operation in the Library. If payment is not received by the tenth day of each month a $25.00 late charge will be assessed. The payment amount will be reviewed on an annual basis."

Page 4

or condition of this Agreement;".

On June 9, 2008, the Library filed a civil action against the Debtor and SCI in the District Court, First Judicial District, Laramie County, Wyoming, alleging : (1) lease default; 2) addendum default; (3) recovery of title to equipment; (4) damage to premises; (5) attorney's fees and costs; and (6) disregard of corporate existence. The Debtor filed for Chapter 7 bankruptcy protection on December 3, 2009. The Library filed a notice in the state district court action staying that proceeding pending resolution in the Bankruptcy Court.

The Library initiated this adversary proceeding on February 5, 2009, alleging that the Debtor obtained money by false pretenses and false representations to the Library, that resulted in the Library advancing funds to SCI to purchase equipment, furniture, decor items and signage, with the understanding that such items would be owned by the Library, subject to the agreement that SCI would repurchase the items from the Library on a separate installment sales contract.

## ANALYSIS

The first issue that the Court must address is whether the Debtor is personally liable for the debts of SCI. Elizabeth Lynn Bunya filed an individual Chapter 7 bankruptcy. The Debtor testified and the evidence shows that the Library and SCI entered into the Agreement and later, the Addendum. Neither document shows that the Debtor personally guaranteed SCI's obligations on either contract.

The Library alleges that the Debtor commingled the funds provided to SCI from the

Library into her personal accounts, alluding to a "piercing the corporate veil" claim. "As a general rule, a corporation is a separate entity distinct from the individuals comprising it."[6] Wyoming statutes governing corporations do not address the circumstance when the veil can be pierced. The Wyoming Supreme Court determined that the corporation's legal entity will be disregarded whenever the recognition of it, in a particular case leads to injustice.[7] The circumstances under which the corporate veil would be pierced under Wyoming law would be when it appears that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation ceases and that the facts are such that an adherence to the fiction of the separate existence of the corporation, would under particular circumstance, sanction a fraud or promote injustice.[8]

Among the factors for a court to determine if the corporate veil can be pierced, are:

> "commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or asset to other than corporate uses; the treatment by an individual of the assets of the corporation as his own; the failure to obtain authority to issue or subscribe to stock; the holding out of adequate corporate records and the confusion of the records of the separate entities; the identical equitable ownership in the two entities; the identification of the equitable owners with the domination and supervision and management; the failure to adequately capitalize a corporation; the absence of corporate assets and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a

---

[6] *Opal Mercantile v. Tamblyn*, 616 P.2d 776, 778 (Wyo. 1980).

[7] *Caldwell v. Roach*, 12 P. 2d 376, 380 (1932).

[8] *Miles v CEC Homes, Inc.*, 753 P.2d 1021, 1023 (Wyo. 1988), (quoting *Amfac Mechanical Supply Co., v. Federer*, 645 F.2d 73 (Wyo. 1982).

Page 6

misrepresentation of the identity of the reasonable ownership, management and financial interest or arm's length relationships amount the entities; the use of the corporate entity to procure labor, services or merchandise [from others] for another person or entity; the diversion of assets from a corporation or a stockholder or other person or entity, to the detriment of creditors; or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; the contracting with another with intent to avoid performance by use of corporation as a subterfuge of illegal transactions and the formation and use of a corporation to transfer to it the existing liability of another person or entity."[9]

The Wyoming Supreme Court recognized that piercing the corporate veil is an equitable doctrine.[10] It is a judicially created remedy for situations where corporations have not been operated as separate entities as contemplated by statute and are not entitled to be treated as a separate entity. The determination of whether the doctrine applies centers on whether there is an element of injustice, fundamental unfairness, or inequity.[11]

The Debtor testified that the account at the Credit Union was a "seed account," segregated from her and her husband's personal funds and only used to pay café operating costs and daily expenses. The Debtor testified that she transferred the funds from the cafe's daily operating account at ANB and into the "seed account" on the advice of professionals. She further testified that the only amount she could not account for being SCI expenses was a total of $160.00. The Debtor, by her testimony, was able to cross reference withdrawals from the "seed account" at the Credit Union against deposits into the cafe's operating

---

[9] *Miles* at 1023-24.

[10] *State ex rel. Christensen v. Nugget Coal Co.*, 144 P.2d 944 (Wyo. 1944).

[11] *In re Kaycee Land and Livestock v Flahive*, 46 P.3d 323 (Wyo. 2002).

Page 7

account at ANB and accounted for expenses attributed to SCI. The Court finds that the funds received by the Library were used by SCI for operating expenses. The Library did not prove that SCI and the Debtor commingled funds.

Additionally, the Court considered other factors listed above to determine if the Debtor's actions allow for the corporate veil to be pierced. The only factor that this Court finds as applicable is that the café was not adequately capitalized. However, it is apparent that the Library knew this factor upon entering into the Addendum. The wording in the Addendum states, "Due to the shortfalls in funding available to CONTRACTOR, the LIBRARY agrees to fund the following items..." Additionally, the Debtor admitted to Library, that her "angel" investor had withdrawn support, prior to receiving the Library funds. However, the Library acknowledged this, and agreed to the terms of the Addendum.

The testimony and evidence showed that SCI maintained its own bank account; filed its own tax return; had retained a bookkeeper and accountant for tax purposes; had employees on the SCI payroll, not the Debtor's; the Lease was in the name of SCI, not the Debtor's; the personal guarantee on the Lease, was individually, by the Debtor and her husband. SCI was operated as a separate entity. This Court finds that the Library did not meet its burden in establishing that the Debtor's action with regard to SCI rise to the level that the corporate veil may be pierced.

The Library filed this complaint objecting to the Debtor's discharge under 11 U.S.C. § 523(a)(2)(A), which states that an individual debtor is not discharged "from any debt for

money...to the extent obtained by false pretenses, a false representation..." For the reasons stated above, the Debtor is not personally liable for the debt between the Library and SCI. Therefore, the Library's objection to the Debtor's discharge is denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 2 day of November, 2010.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
James Salisbury
Elizabeth Bunya